ORDERED.

**Dated:  May 08, 2015**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 8:11-bk-13090-MGW
                                                                Chapter 7

Jeffrey Adam Runyan and
Rachel Ann Runyan,

      Debtors.
_____/

Angela Welch, as Chapter 7 Trustee,                             Adv. No. 8:13-ap-00344-MGW

      Plaintiff,

v.

Green Tree Servicing LLC,

      Defendant.
_____/

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

After the Debtors defaulted on their mortgage, Green Tree Servicing LLC—the loan

servicer on the Debtors' mortgage—attempted to collect the outstanding balance by making

collection calls and sending collection notices. But those collection attempts (the calls and

notices) were made after the Debtors notified Green Tree they were represented by counsel. And

the collection calls were made to the Debtors' cell phone using an autodialer. This Court must

decide whether Green Tree's collection efforts violated the Florida Consumer Collections Practices Act ("FCCPA") or the Telephone Consumer Protection Act ("TCPA") and, if so, whether Green Tree is entitled to set off any damages it owes under the FCCPA and TCPA against any amounts the Debtors owe Green Tree on their mortgage.

The Court concludes Green Tree violated the FCCPA. The FCCPA expressly prohibits a creditor from contacting a debtor directly once the creditor knows the debtor is represented by counsel. At trial, Green Tree's corporate representative conceded that Green Tree contacted the Debtors after it knew they were represented by counsel. But Green Tree is not liable under the TCPA for contacting the Debtors on their cell phone using an autodialer because the Debtors consented to calls on their cell phone by listing that number on their mortgage application, and they never revoked that consent. So Green Tree is liable to the Debtors for $2,000 in statutory damages under the FCCPA. Green Tree, however, is not permitted to set off the $2,000 in statutory damages against the amounts the Debtors owe on their mortgage because allowing setoff here would thwart the FCCPA's goal of deterring abusive debt collection practices.

### Findings of Fact

In March 2007, the Runyans (the Debtors in this bankruptcy case) obtained a loan that was secured by a home mortgage.[1] Toward the middle of 2010, Mrs. Runyan's health declined, and the Runyans fell into financial difficulty.[2] By the end of the year, they could no longer make payments on the loan.[3] Seeing trouble on the horizon, the Runyans hired an attorney in February

---

[1] Def's Exs. 1-2. The parties dispute who owns the second mortgage on the Runyans' home. But they agree that Green Tree Servicing LLC, on behalf of the lender, had the right to collect the outstanding debt.

[2] Adv. Doc. No. 52 at 33:22-34:2.

[3] *Id.* at 34:8-15.

2011 to assist with the potential foreclosure of their home and a possible bankruptcy filing.[4] The following month, Green Tree began efforts to collect the outstanding loan balance: $39,814.38.[5] Having no success, Green Tree wrote off the debt within weeks and transferred the account from loan servicing to the recovery department.[6]

When the Runyans began getting calls from Green Tree's recovery department, Mr. Runyan explained that he and his wife would not be able to settle the debt and provided Green Tree with the name and contact information for an attorney they hired to file for bankruptcy.[7] In fact, Green Tree concedes that Mr. Runyan had provided Green Tree with their attorney's name and the name of the law firm he worked for, along with the firm's telephone number and street address, by no later than April 8, 2011.[8] Still, contrary to company policy, Green Tree continually attempted to contact the Runyans directly by phone and by mail after it knew they were represented by counsel.[9]

Three months later, in July 2011, the Runyans filed for chapter 7 bankruptcy.[10] The chapter 7 Trustee thereafter filed a two-count adversary complaint for damages under the FCCPA[11] (Count I) and the TCPA[12] (Count II). Green Tree, of course, denied violating the

---

[4] *Id.* at 35:4-16.

[5] *Id.* at 63:3-8.

[6] *Id.* at 63:6-10.

[7] *Id.* at 35:25-36:2.

[8] *Id.* at 52 at 102:2-8; 102:23-103:1.

[9] *Id.* at 104:18-105:1, 106:21-107:5.

[10] Doc. No. 1.

[11] § 559.55, Fla. Stat., *et seq.*

[12] 47 U.S.C. § 227.

FCCPA and TCPA. And even if it did violate either statute, Green Tree contends it should be entitled to set off any damages recoverable under either statute against any amounts the Runyans owe on their mortgage. On May 5, 2014, the parties tried the Trustee's FCCPA and TCPA claims.

## Conclusions of Law[13]

### *By its own admission, Green Tree violated the FCCPA*

The Florida Legislature enacted the FCCPA to protect the consuming public from abusive debt collectors.[14] The FCCPA identifies nineteen prohibited practices.[15] Here, the Trustee believes that Green Tree engaged in two of them: (1) communicating with the Runyans so frequently so as to harass or abuse them; and (2) communicating with the Runyans while knowing that they were represented by an attorney.[16] In considering FCCPA claims, the Court must view such claims "from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse."[17]

While determining whether a debt collector communicated with a debtor too frequently or too aggressively is a fact-intensive inquiry that is dependent on many factors (such as the

---

[13] The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The parties have consented to the Court's entry of a final judgment in this proceeding for purposes of 28 U.S.C. § 157(c)(2).

[14] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). Green Tree, as a "debt collector," is regulated under the FCCPA. § 559.55(7), Fla. Stat. The Runyans' home loan is protected as a "consumer debt." § 559.55(6), Fla. Stat.

[15] §§ 559.72(1)-(19), Fla. Stat.

[16] *Id.* at §§ 559.72(7), (18). The Trustee originally contended that Green Tree also violated the FCCPA by knowingly attempting to enforce an illegitimate debt. *Id.* § 559.72(9). But she abandoned this theory at trial.

[17] *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985).

timing of phone calls or the debt collector's tone or demeanor),[18] determining whether a debt collector impermissibly communicated with a represented debtor is more easily discernable: either it did or it did not. And here, we know that Green Tree did, primarily because its litigation representative, Peter Dalpiaz, admitted as much. During trial, Mr. Dalpiaz confirmed that Green Tree was aware by April 8, 2011, that the Runyans were represented by counsel.[19] Yet, as he explained at trial, Green Tree continued to communicate directly with the Runyans—through repeated phone calls and routine mailings—which Mr. Dalpiaz openly recognized was wrong.

On cross-examination, the Trustee's counsel asked Mr. Dalpiaz, "Isn't it true that [Green Tree violated] the Florida Consumer Collections Practices Act on at least some of the phone calls made on this particular account?"[20] "I suppose, yes, that would be my opinion," Mr. Dalpiaz conceded.[21] In fact, Mr. Dalpiaz admitted that Green Tree's policy regarding contacting represented debtors is facially unlawful. The FCCPA provides that a debt collector can contact a represented debtor if the debtor's attorney fails to respond within thirty days of the debt collector's attempt to contact the debtor's attorney.[22] But according to Mr. Dalpiaz, Green Tree's policy affords a debtor's attorney only ten days to respond.[23] Other evidence corroborates Mr. Dalpiaz's admission that Green Tree violated the FCCPA.

For instance, Green Tree's call logs showed that Green Tree called the Runyans thirty times—seven times in May, nineteen times in June, and four times in July—all while knowing

---

[18] *Williams v. Educ. Credit Mgmt. Corp.*, 2015 WL 847381, at *6 (M.D. Fla. Feb. 26, 2015).

[19] Adv. Doc. No. 52 at 102:23-103:1.

[20] *Id.* at 105:14-17.

[21] *Id.* at 105:21-22.

[22] § 559.72(18), Fla. Stat.

[23] Adv. Doc. No. 52 at 106:5-17.

that the Runyans were represented.[24] On seven of those dates, Green Tree placed multiple calls.[25] The call logs similarly show that Green Tree called the Runyans' attorney eleven times over the same period—yet further evidence that Green Tree knew exactly how to reach the Runyans' attorney.[26] Leaving nothing to chance, Green Tree also sent the Runyans (jointly and individually) billing statements and collection notices on a near monthly basis.[27]

When Green Tree should have immediately ceased attempting to communicate directly with the Runyans, it carried on without restraint. In doing so, it definitively violated the FCCPA's prohibition against communicating with represented debtors—something that Green Tree cannot even contest. The FCCPA provides for $1,000 in statutory damages on a per-plaintiff basis.[28] Each independent violation, however, does not give rise to an additional penalty.[29] Because the Trustee is limited to $2,000 in statutory damages if Green Tree violated the FCCPA, and the Court has already concluded Green Tree did by contacting the Runyans once it knew they were represented by counsel, the Court need not decide if Green Tree's conduct was also abusive or harassing.

### Green Tree did not violate the TCPA

"In 1991, Congress enacted the TCPA in an effort to address a growing number of telephone marketing calls and certain practices thought to be an invasion of consumer privacy

---

[24] *Id.* at 101-112. In some instances, Mr. Runyan would answer the calls; other times, he would simply ignore them. *Id.* at 35:25-36:2, 38:6-11. Mrs. Runyan never received calls from or spoke with Green Tree. *Id.* at 48:7-12; 50:12-22.

[25] *Id.*

[26] *Id.* at 112-114.

[27] *Id.* at 98-102.

[28] *Tacoronte v. Tate & Kirlin Assocs.*, 2013 WL 5970720, at *2 (M.D. Fla. Nov. 8, 2013). The FCCPA also permits a plaintiff to recover actual damages. But the Trustee does not claim actual damages on the Debtors' behalf.

[29] *Id.*

and a risk to public safety."[30] To that end, § 227(b)(1)(A)(iii) of the TCPA prohibits placing automatic calls to cell phones without the "prior express consent of the called party."[31] At trial, Green Tree stipulated that it placed eleven autodialed calls to Mr. Runyan's cell phone between June 2, 2011 and July 8, 2011.[32]

Because the Runyans voluntarily listed Mr. Runyan's cell phone number (and no other number) on the loan application,[33] however, Green Tree contends that Mr. Runyan consented to the autodialed calls. In this regard, Green Tree is correct. The Federal Communications Commission has explained that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."[34] The Runyans accept this but believe that Mr. Runyan later revoked his consent.

On this point, the Eleventh Circuit recently explained, in *Osorio v. State Farm Bank, F.S.B.*, that "Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation."[35] In reaching this conclusion, the Eleventh Circuit relied on a Fourth Circuit decision that explains that the TCPA serves the government's interest in

---

[30] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15391-92 (2012).

[31] 47 U.S.C. § 227(b)(1)(A)(iii).

[32] Adv. Doc. No. 52 at 90:20-23.

[33] *Id.* at 21:20-25.

[34] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 559 (2008) ("FCC Ruling"). The Eleventh Circuit has in the past relied on the FCC Ruling. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014). Regardless, under the Hobbs Act, 28 U.S.C. § 2342, federal trial courts do not have the authority to invalidate FCC rulings. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1113 (11th Cir. 2014).

[35] *Osorio*, 746 at 1255. This is true, the court noted, so long as contractual provisions do not require otherwise. *Id.* Here, neither party introduced evidence of such restrictions.

protecting residential privacy by enabling recipients of autodialed calls "to contact the caller to stop future calls."[36] The Eleventh Circuit also relied on a FCC declaratory ruling wherein the FCC noted that consumers can end incoming voice calls by simply "express[ing] a desire to opt out." So under Eleventh Circuit precedent, the TCPA requires—at a minimum—express and clear revocation of consent; implicit revocation will not do.

At best, the Runyans implicitly revoked their consent here. Mr. Runyan testified at trial that he told Green Tree it could contact his attorney with any further questions.[37] Later, in response to an overtly suggestive question by the Trustee's counsel, Mr. Runyan explained that in doing so he intended to revoke his consent to Green Tree's autodialed phone calls.[38] But when asked point-blank on cross-examination whether he plainly told Green Tree to stop making calls to his cell phone, Mr. Runyan conceded he did not.[39]

No other evidence was presented on the issue. Proving consent to autodialed cell phone calls is an affirmative defense for which Green Tree bears the burden of proof.[40] Because Green Tree met this burden, the Runyans had the duty to prove that Mr. Runyan effectively revoked his consent. Telling Green Tree that it *could* do something hardly indicates that it *cannot* do something else. Orally revoking consent to autodialed cell phone calls is not a tall task. But it

---

[36] *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013).

[37] Adv. Doc. No. 52 at 36:13-15.

[38] *Id.* at 52 at 38:20-23. The Trustee's counsel asked Mr. Runyan if it was his "intent, by telling Green Tree to stop calling you and call the attorney, to revoke consent for Green Tree to contact you directly?" *Id.* Contrary to the premise of the question, Mr. Runyan never testified that he told Green Tree to stop calling him.

[39] *Id.* at 40:6-10.

[40] *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011); *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1224 (S.D. Fla. 2014).

does require a measure of clarity, which the Runyans have not shown. For these reasons, the Runyans have failed to establish a violation of the TCPA.

*The Trustee is entitled to recover $2,000 in statutory damages*

Any person who violates the FCCPA is liable for actual damages, statutory damages not to exceed $1,000, court costs, and the plaintiff's reasonable attorneys' fees."[41] Here, the Runyans have not proven actual damages. But they are each entitled to collect $1,000 in statutory damages.[42] Green Tree contends that Mrs. Runyan is not entitled to FCCPA damages because it communicated only with Mr. Runyan. This is incorrect. Green Tree sent mail directly to Mrs. Runyan. Although Mrs. Runyan admitted that her husband primarily dealt with Green Tree, her unrebutted testimony was that she saw some of the collection notices that were addressed to her.[43] This alone establishes a FCCPA violation, considering that Green Tree knew that the Runyans had hired an attorney. But more than that, the FCCPA disallows indirect communication with a represented debtor,[44] which Green Tree surely engaged in when it communicated with Mr. Runyan about the Runyans' joint debt.[45] Accordingly, the Trustee is entitled to recover $2,000 in statutory damages under the FCCPA.

And Green Tree is not permitted to set off the $2,000 in statutory damages it must pay to the Trustee against its $39,814.38 claim against the Debtors' bankruptcy estate. "In general, setoff is favored under the law in order to avoid a multiplicity of suits, added expense,

---

[41] Fla. Stat. § 559.77(2).

[42] *Arianas v. LVNV Funding LLC*, 2014 WL 5393607, at *2 (M.D. Fla. Oct. 10, 2014) ("U.S. District Courts in Florida have either expressly stated that the FCCPA limits statutory damages to $1,000 per action . . . even when a series of FCCPA violations exist.").

[43] Adv. Doc. No. 52 at 49:10-18.

[44] See § 595.55(2), Fla. Stat. ("'Communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium.").

[45] Adv. Doc. No. 52 at 51:1-4.

inconvenience, injustice and inefficient use of judicial resources."[46] But the decision to permit or disallow a setoff as to FCCPA liability is within the bankruptcy court's sound discretion,[47] and a setoff in this case is unfitting.[48]

The Florida legislature enacted the FCCPA as a means of regulating debt collection practices.[49] In addition to eradicating abusive practices, the FCCPA aims to protect each consumer's right to privacy.[50] If these goals are to be reached, consumer collection agencies must appreciate the real penalties for violating the FCCPA. Otherwise, the FCCPA will have little to no deterrent effect. If a consumer collection agency knows that it can engage in harassing and obnoxious debt collection practices with the best outcome being that it squeezes money from consumers and the worst being that the consumer's debt is merely reduced by penalties imposed under the FCCPA—with no money ever coming out of the collection agency's pocket[51]—the collection agency will have no reason to play by the rules.

Over a three-month period, Green Tree purposely engaged in prohibited conduct: calling the Runyans thirty times, often multiple times per day. During this same time, Green Tree sent the Runyans collection letters explaining that their loan payments were "seriously past due," and

---

[46] 5 Collier on Bankruptcy ¶ 553.01 (16th ed. 2013) (citing *North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co.*, 152 U.S. 596, 615-616, 14 S. Ct. 710, 715-716, 38 L. Ed. 565 (1894)).

[47] *Brook v. Chase Bank USA, N.A.*, 566 F. App'x 787, 790 (11th Cir. 2014).

[48] Green Tree contends that because setoff merely reduces its claim against, and adds nothing to, the bankruptcy estate, even if it is liable under the FCCPA, the Trustee lacks Article III standing because the bankruptcy estate has not suffered an actual injury. Because the Court concludes that setoff is inappropriate in this case, it need not consider this argument.

[49] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

[50] *Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 512 (Fla. 1st DCA 2007); *Bureau of Orlando, Inc. v. Cont'l Cas. Co.*, 342 So. 2d 1019, 1020 (Fla. 5th DCA 1977).

[51] The exception would be those cases were the penalties imposed under the FCCPA exceed the consumer's debt.

that they themselves should call to discuss payment options.[52] An attorney's most significant

responsibility is to safeguard his client's interests. To deny an attorney the opportunity to so by

contacting his client directly is unacceptable. And the FCCPA surely recognizes that.

### Conclusion

The Trustee is entitled to recover $2,000 in statutory damages under the FCCPA. That

amount shall not be set off against Green Tree's proof of claim in the main bankruptcy case. The

Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of

Law.

---

Attorney Kenneth Grace is directed to serve a copy of these Findings of Fact and Conclusions of
Law on interested parties who are non-CM/ECF users and file a proof of service within 3 days of
their entry.

---

**Kenneth C. Grace, Esq.**
  **Lash Wilcox & Grace PL**
**Brian L. Shrader, Esq.**
  **Centrone & Shrader, PLLC**
*Counsel for Plaintiff*

**Ryan C. Reinert, Esq.**
  **Shutts & Bowen LLP**
*Counsel for Defendant*

---

[52] Adv. Doc. No. 52 at 97-101.